NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

FREDERICK DION FORD, *Appellant*.

No. 1 CA-CR 16-0652
FILED 8-31-2017

Appeal from the Superior Court in Maricopa County
No. CR2013-450766-001
The Honorable Michael W. Kemp, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Office of the Legal Advocate, Phoenix
By Consuelo M. Ohanesian
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge James P. Beene delivered the decision of the Court, in which Judge Kent E. Cattani and Judge Peter B. Swann joined.

---

**B E E N E**, Judge:

¶1            Frederick Dion Ford ("Ford") appeals his conviction and sentence for second-degree murder.  For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2            Ford shot another man twice, once in the face and once in the back of the head, killing him.  He was indicted on one count of second-degree murder and one count of misconduct involving weapons. [1]  After a jury trial, Ford was convicted of second-degree murder and sentenced to 22 years' imprisonment.  He timely appealed, raising one issue regarding the jury selection process.  We have jurisdiction pursuant to Arizona Revised Statutes sections 12–120.21(A)(1), 13–4031, and –4033(A)(1) (2017).

### DISCUSSION

¶3            Ford argues that the State's use of a peremptory strike of a prospective juror violated his Fourteenth Amendment Equal Protection rights.

¶4            During *voir dire*, prospective jurors, including jurors 9, 66, and 11, stated that serving on the jury would cause them financial hardship. Juror 9 stated that he worked from 4 a.m. until 6 p.m. and could not afford to miss work to sit as a juror.  Juror 66, an office manager, stated he had no replacement at work, and was one of only a few employees who spoke English. Juror 66 was also concerned he would face retaliation for serving on a jury, and his employer made no provisions for employee jury service. Juror 11, who is black, stated she works full-time to pay for school.  The court dismissed jurors 9 and 66 for cause without objection.  However, the court did not dismiss juror 11 for cause; the State exercised a peremptory strike to dismiss her.

---

[1]      The misconduct involving weapons charge was severed from the second-degree murder charge and is not part of this appeal or decision.

¶5            Ford objected to the State's peremptory strike of juror 11 on the ground that she was the only black member of the venire panel. The superior court then asked the State for a race-neutral reason for the challenge. The State explained that it struck juror 11 because she expressed similar concerns to jurors 9 and 66; that is, she was worried about the financial hardship of serving on a jury. Ford was given an opportunity to respond to the State's reasoning, and did so. He argued juror 11 stated she would face financial difficulties because the trial would last at least six days and she would miss work. But that she said this was only the case if she was not reimbursed by the court for her service. Nevertheless, the superior court accepted the race-neutral basis presented by the State and overruled Ford's objection. A jury was then empaneled.

¶6            Use of peremptory strikes to exclude jurors based on their race violates the Fourteenth Amendment's Equal Protection Clause. *See Batson v. Kentucky*, 476 U.S. 79, 89 (1986). The trial court follows a three-step analysis to determine whether a peremptory strike violates *Batson*. *State v. Escalante-Orozco*, 241 Ariz. 254, 271, ¶ 35 (2017) (Petition for Certiorari Filed (NO. 17-90), July 18, 2017). First, a defendant must make a *prima facie* showing that the strike was racially discriminatory. *Id.* Second, if the showing is made, the prosecutor must provide a race-neutral reason for the strike. *Id.* Finally, if the prosecutor provides a facially race-neutral rationale, the burden shifts to the defense to prove the peremptory strike rested on purposeful discrimination. *State v. Newell*, 212 Ariz. 389, 401, ¶¶ 54-55 (2006). We will uphold the trial court's ruling unless it was clearly erroneous. *Escalante-Orozco*, 241 Ariz. at 271, ¶ 35.

¶7            Here, after Ford objected to the peremptory strike of juror 11, the superior court asked the State to present a race-neutral reason for the challenge, and by doing so implicitly found a *prima facie* case for racial discrimination. This request triggered the second step of the *Batson* process. *See Newell*, 212 Ariz. at 401, ¶ 54 (2006) ("The first step of the *Batson* analysis is complete when the trial court requests an explanation for the peremptory strike."). The State explained that, like jurors 9 and 66, juror 11 was facing potential financial hardship, and was struck for that reason. After giving Ford an opportunity to respond, the court overruled his objection, finding that the State established a valid basis for striking juror 11.

¶8            The State met its burden of presenting a race-neutral reason for striking a minority juror. There is no direct or circumstantial evidence, only Ford's inference, that the State based its peremptory strike on purposeful racial discrimination. *See Newell*, 212 Ariz. at 402, ¶ 58 (mere inference by defense that peremptory strike was result of purposeful racial

discrimination insufficient to satisfy burden of persuasion). Ford argues that because jurors 9 and 66 had far more serious financial concerns than juror 11, the State's peremptory strike was based on a pretextual concern. Whether the prosecutor's exercise of the strike was pretextual was a question of fact and credibility to be resolved by the trial court. *See id.* at 401, ¶ 54 ("This third step is fact intensive and will turn on issues of credibility which the trial court is in a better position to assess than is this Court."). The superior court determined there was a non-discriminatory reason for the State's peremptory strike of juror 11. Because the "trial court is in a better position to assess" credibility than this court, its "finding at this step is due much deference." *Id*. There is no support in the record for Ford's assertion that the State's peremptory strike regarding juror 11 was pretextual. The court did not err by denying Ford's *Batson* challenge to juror 11.

**CONCLUSION**

**¶9**        For the foregoing reasons, we affirm Ford's conviction and sentence.

